UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

PAUL R. S.,

Plaintiff,

v. 5:25-CV-00979 (GTS/ML)

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

---

APPEARANCES: OF COUNSEL:

OLINSKY LAW GROUP
*Attorney for Plaintiff*
250 South Clinton Street, Suite 210
Syracuse, New York 13202

HOWARD D. OLINSKY, ESQ.

U.S. SOCIAL SECURITY ADMIN.
*Counsel for Defendant*
6401 Security Boulevard
Baltimore, Maryland 21235

VERNON NORWOOD, ESQ.
FERGUS J. KAISER, ESQ.

**MIROSLAV LOVRIC**, United States Magistrate Judge

## REPORT-RECOMMENDATION

Plaintiff Paul R. S. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of a final decision of the Commissioner of Social Security ("Defendant" or "Commissioner") denying his application for Supplemental Security Income ("SSI"). (Dkt. No. 1.) This matter was referred to me for Report and Recommendation by the Honorable Glenn T. Suddaby, United States District Court Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d). (Dkt. Nos. 4, 5.) This case has proceeded in accordance with General Order 18.

Currently before this Court are Plaintiff's motion for judgment on the pleadings and Defendant's motion for judgment on the pleadings. (Dkt. Nos. 11, 13.) For the reasons set forth below, this Court recommends that the District Court deny Plaintiff's motion for judgment on the pleadings, grant Defendant's motion for judgment on the pleadings, and affirm the Commissioner's decision.

## I. PROCEDURAL HISTORY

On October 29, 2021, Plaintiff protectively filed for SSI, alleging disability dating from December 31, 2014. (Administrative Transcript ("T") 389-95.) His application was denied initially on January 14, 2022, and on reconsideration on May 9, 2022. (T. 107, 123, 165-172.) On November 1, 2022, Plaintiff testified before Administrative Law Judge ("ALJ") Bruce Fein, who also heard the testimony of vocational expert ("VE") Marian Marracco. (T. 67-95.) The ALJ issued an unfavorable decision on December 20, 2022. (T. 125-141.)

On November 15, 2023, the Appeals Council granted Plaintiff's request for review, vacated ALJ Fein's December 2022 decision, and remanded the case for further proceedings. (T. 142-47.) On August 1, 2024, ALJ Fein held a video hearing where he heard the testimony of impartial medical expert Dr. Douglas Shepard and VE Dawn Blythe. (T. 37-66.) The ALJ issued another unfavorable decision on August 12, 2024 (T. 10-24.) The Appeals Council denied Plaintiff's request for review on June 30, 2025. (T. 1-6.)

Plaintiff timely commenced this proceeding on July 24, 2025 to challenge the denial of benefits. (Dkt. No. 1.)

## II. GENERALLY APPLICABLE LAW

### A. Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987)). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson*, 817 F.2d at 986.

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42 U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991). To facilitate the court's review, an ALJ must set forth the crucial factors justifying his or her findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision. *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248 (N.D.N.Y. 2010); *see also Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984). "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (citations omitted). It must be "more than a mere scintilla" of evidence scattered throughout the administrative record. *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citations omitted). Where substantial evidence supports the ALJ's findings they must be sustained "even where substantial evidence may

support the plaintiff's positions and despite that the court's independent analysis of the evidence may differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153. In other words, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

**B. Standard for Benefits**[1]

To be considered disabled, a plaintiff-claimant seeking benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). In addition, the plaintiff-claimant's

> physical or mental impairment or impairments [must be] of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the Social Security Administration ("SSA") promulgated regulations establishing a five-step sequential evaluation process to determine disability. 20 C.F.R. § 416.920(a)(4) (2015). Under that five-step sequential evaluation process, the decision-maker determines:

---

[1] The requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so that "decisions under these sections are cited interchangeably." *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

## III. FACTS

As of the date of the ALJ's decision, Plaintiff was 43 years old. (T. 23, 389.) At the time of his November 1, 2022 hearing, Plaintiff resided alone. (T. 73.) He is a high school graduate who attended regular education classes. (T. 74, 443.) In 2012, Plaintiff completed commercial driver school but failed the required physical examination to obtain his commercial driver's license. (T. 74.) His recent work history includes several short-term positions as a driver, janitor, and maintenance worker. (T. 77, 443.)

Plaintiff has suffered from back pain since a workplace injury in 2009. (T. 621, 644.) During his October 2022 consultative examination, Plaintiff described a constant pain that radiates from his lower back into both of his legs and is exacerbated by sudden movements of the head, neck, or arms. (T. 709.) At his hearing, Plaintiff described pain and muscle tightness that was aggravated when he sat or stood in one position for longer than ten minutes. (T. 82-83.) He testified that he had been prescribed several non-narcotic prescription pain medications as the pain became progressively worse but had not experienced much improvement. (T. 80.)

In August 2021, Plaintiff was diagnosed with keratoconus, a progressive eye condition

where the cornea becomes thinner, steeper and bulges outward into a cone shape, causing blurred vision and sensitivity to light and glare.[2] (T. 588.) Plaintiff testified that he had surgery to strengthen the muscles around the cornea, but the vision loss was irreversible. (T. 75.) He testified that he wore special contact lenses that gave him "decent vision" but could only be worn for about four hours at a time. (T. 76.)

The record includes Plaintiff's medical history. Rather than summarizing the records at the outset, I will refer to the pertinent records during my discussion of Plaintiff's arguments.

## IV. THE ALJ'S AUGUST 12, 2024 DECISION

At step one of the sequential evaluation, the ALJ found Plaintiff had not engaged in substantial gainful activity since October 12, 2021, the application date. (T. 12.) At step two, the ALJ found that Plaintiff has the following severe impairments: "chronic lumbar spondylosis with bilateral radiculopathy, arthritis of facet joints, and post-surgery for bilateral keratoconus." (T. 13.) At step three of the evaluation, the ALJ found that Plaintiff's impairments either singly or in combination did not meet or medically equal the severity of a listed impairment including Listing 1.15 (Disorders of the skeletal spine resulting in compromise of a nerve root(s)), Listing 1.16 (Lumbar spinal stenosis resulting in compromise of the cauda equina), Listing 2.02 (Loss of central visual activity), Listing 2.03 (Contraction of the visual field in the better eye), Listing 2.04 (Loss of visual efficiency, or visual impairment, in the better eye), and Listing 14.09 (Inflammatory arthritis). (T. 13-14.)

Next, the ALJ found that Plaintiff could perform less than full range of light work. (T. 14.) Specifically, the ALJ found that Plaintiff:

---

[2] A more detailed description of keratoconus can be found at https://www.mayoclinic.org/diseases-conditions/keratoconus/symptoms-causes/syc-20351352 . [https://perma.cc/6H7N-BWP9].

> can perform all postural activities occasionally, except no crawling or climbing ropes, ladders, or scaffolds; he can occasionally reach overhead bilaterally; he should avoid concentrated exposure to extreme cold, excessive vibration, unprotected heights, and hazardous machinery; he is limited to occupations requiring only occasional depth perception; he is allowed to move from a sitting position to a standing position at 30-minute intervals throughout the day while remaining at the workstation; and he can alternate between standing and walking at two-hour intervals throughout the day.

(*Id*.)

In making the RFC determination, the ALJ stated that he considered all of Plaintiff's symptoms and the extent to which those symptoms could "reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 416.929" and Social Security Ruling ("SSR") 16-3p. *Id*. The ALJ further stated that he considered opinion evidence and prior administrative medical findings in accordance with 20 C.F.R. § 416.920c. *Id*. The ALJ also considered Plaintiff's subjective complaints regarding the intensity, persistence and limiting effects of his symptoms and found them "not entirely consistent with the medical evidence and other evidence in the record. . . ." (T. 19.) The ALJ next found that Plaintiff has no past relevant work. (T. 22.) Relying on the VE testimony, the ALJ next found that there are jobs existing in significant numbers in the national economy that Plaintiff can perform. (T. 23.) Accordingly, the ALJ found that Plaintiff was not under a disability since October 12, 2021, the date the application was filed. (T. 24.)

## V. ISSUES IN CONTENTION

Plaintiff argues the ALJ erred in his evaluation of the medical opinion evidence. In particular, Plaintiff argues that the ALJ failed to adequately explain his reasoning for adopting or rejecting portions of the medical opinions provided by Dr. Elke Lorensen, who performed a consultative physical examination of Plaintiff, Dr. Warren Wulff, an orthopedic specialist who

treated Plaintiff, and Dr. Douglas Shepard, an orthopedic surgeon who testified as an impartial medical expert. (Dkt. No. 11 at 8-22.) The Commissioner contends that the ALJ's evaluation of the medical opinion evidence, the related RFC determination, and the ultimate disability determination were supported by substantial evidence. (Dkt. No. 13 at 8-14.)

## VI. RFC AND MEDICAL OPINION EVIDENCE

### A. Legal Standards

#### 1. RFC

RFC is "what [the] individual can still do despite his or her limitations. Ordinarily, RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis. . . ." A "regular and continuing basis" means eight hours a day, for five days a week, or an equivalent work schedule. *Balles v. Astrue*, No. 3:11-CV-1386 (MAD), 2013 WL 252970, at *2 (N.D.N.Y. Jan. 23, 2013) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting SSR 96–8p, 1996 WL 374184, at *2)); *Babcock v. Berryhill,* No. 5:17-CV-00580 (BKS), 2018 WL 4347795, at *12-13 (N.D.N.Y. Sept. 12, 2018); *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 33 (2d Cir. 2013); *Stephens v. Colvin*, 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016).

In rendering an RFC determination, the ALJ must consider objective medical facts, diagnoses, and medical opinions based on such facts, as well as a plaintiff's subjective symptoms, including pain and descriptions of other limitations. 20 C.F.R. §§ 404.1545, 416.945. *See Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999) (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Kirah D. v. Berryhill*, No. 3:18-CV-0110 (CFH), 2019 WL 587459, at *8 (N.D.N.Y. Feb 13, 2019); *Genier v. Astrue,* 606 F.3d 46, 49 (2d Cir. 2010). An ALJ must specify the functions a plaintiff is capable of performing and may not simply make

conclusory statements regarding a plaintiff's capacities. *Roat v. Barnhart,* 717 F. Supp. 2d 241, 267 (N.D.N.Y. 2010); *Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588; *LaPorta*, 737 F. Supp. at 183, *Stephens v. Colvin,* 200 F. Supp. 3d 349, 361 (N.D.N.Y. 2016); *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004). The RFC assessment must also include a narrative discussion, describing how the evidence supports the ALJ's conclusions, citing specific medical facts, and non-medical evidence. *Natashia R. v. Berryhill*, No. 3:17-CV-01266 (TWD), 2019 WL 1260049, at *11 (N.D.N.Y. Mar. 19, 2019) (citing SSR 96-8p, 1996 WL 374184, at *7).

**2. Evaluating Medical Evidence**

The regulations regarding the evaluation of medical evidence have been amended for claims filed after March 27, 2017,[3] and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. According to the new regulations, the Commissioner "will no longer give any specific evidentiary weight to medical opinions; this includes giving controlling weight to any medical opinion." *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 82 Fed. Reg. 5844, at 5867–68, 2017 WL 168819 (Jan. 18, 2017), *see* 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Instead, the Commissioner must consider all medical opinions and "evaluate their persuasiveness" based on the following five factors: supportability; consistency; relationship with the claimant; specialization; and "other factors." 20 C.F.R. §§ 404.1520c(a)-(c), 416.920c(a)-(c).

Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning "weight" to a medical opinion, the ALJ

---

[3] Plaintiff's application was protectively filed on October 29, 2021. (T. 389-95.) Thus, the new regulations apply in this case.

must still "articulate how [he or she] considered the medical opinions" and "how persuasive [he or she] find[s] all of the medical opinions." *Id.* at §§ 404.1520c(a) and (b)(1), 416.920c(a) and (b)(1). The two "most important factors for determining the persuasiveness of medical opinions are consistency and supportability," which are the "same factors" that formed the foundation of the treating source rule. *Revisions to Rules*, 82 Fed. Reg. 5844-01 at 5853.

An ALJ is specifically required to "explain how [he or she] considered the supportability and consistency factors" for a medical opinion. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). With respect to "supportability," the new regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(1), 416.920c(c)(1). The regulations provide that with respect to "consistency," "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id.* at §§ 404.1520c(c)(2), 416.920c(c)(2).

Under the new regulations an ALJ must consider, but need not explicitly discuss, the three remaining factors in determining the persuasiveness of a medical source's opinion. *Id.* at §§ 404.1520c(b)(2), 416.920c(b)(2). However, where the ALJ has found two or more medical opinions to be equally well supported and consistent with the record, but not exactly the same, the ALJ must articulate how he or she considered those factors contained in paragraphs (c)(3) through (c)(5). *Id.* at §§ 404.1520c(b)(3), 416.920c(b)(3).

### B. Summary of Medical Opinion Evidence

The administrative record contains a number of medical opinions. Because Plaintiff's challenge focuses on the ALJ's evaluation of Plaintiff's back pain and related limitations, this Court will summarize the relevant medical opinions[4] in chronological order.

#### 1. Dr. Warren Wulff

On October 18, 2022, Dr. Wulff completed a medical source statement. (T. 704-06.) Dr. Wulff noted he was in contact with Plaintiff on October 10, 2021 and December 6, 2021.[5] (T. 704.) In describing his treatment of Plaintiff, Dr. Wulff noted that he had referred him to a pain clinic for conservative care of his lower back pain and did not see any indication that surgery was appropriate. (*Id.*) Dr. Wulff opined Plaintiff could sit for two hours continuously before needing to stand up; and could stand for 45 minutes at one time before needing to sit down or walk around. (*Id.*) He further opined Plaintiff could sit for a total of six hours and stand/walk for at least six hours in an eight-hour workday with normal breaks. (T. 705.)

In Dr. Wulff's opinion, Plaintiff would need a job that permits shifting positions at will from sitting, standing, or walking, but did not require the use of a cane or other assistive device. *Id*. Dr. Wulff further opined Plaintiff could frequently lift and carry up to twenty pounds, look down (sustained flexion of the neck), frequently turn his head right or left, look up, hold his head in a static position, occasionally twist his upper body, frequently use his hands to grasp, turn and twist objects and perform fine manipulation, and frequently reach in all directions, including

4 The ALJ also considered the October 2022 opinion of Plaintiff's treating optometrist, Dr. Diane Dingman, when evaluating Plaintiff's visual impairments. (T. 21, 698-701.) Plaintiff has not challenged that aspect of the ALJ's decision.

5 The record shows that Dr. Wulff also evaluated Plaintiff in September 2009 shortly after he injured his back. (T. 621-22.)

overhead. (T. 705-06.)

Dr. Wulff further opined that Plaintiff could rarely stoop, bend, crouch, squat, and climb stairs; and never lift and carry fifty pounds or climb stairs. *Id*. Dr. Wulff opined Plaintiff would need to take unscheduled breaks daily for five minutes during an eight-hour workday. (T. 706.) Lastly, he opined Plaintiff's impairments would cause good and bad days; would cause him to be off task 20% of the time and would be absent more than four days per month. (T. 706.)

The ALJ found Dr. Wulff's opinion "less persuasive," citing a lack of support in the orthopedist's limited treatment notes. (T. 22.) The ALJ recognized that Dr. Wulff's recent treatment of Plaintiff consisted of just two examinations on October 6, 2021 and December 2021, and his October 18, 2022 opinion was not issued until ten months later. (*Id*.) The ALJ also discounted Dr. Wulff's opinion regarding time off task and absenteeism, describing it as speculative and unsupported by the treatment record generally and Plaintiff's mental status examinations specifically. (T. 22.) The ALJ also noted that Dr. Wulff had not performed any formal testing of Plaintiff's attention and concentration, and his overall opinion was inconsistent with the less restrictive opinions provided by Dr. Zito, Dr. Vinluan, Dr. Putcha, and Dr. Shepard. (*Id*.)

**2. Dr. Elke Lorensen**

On October 28, 2022, Dr. Lorensen performed a consultative physical examination of Plaintiff. (T. 709-12, duplicate 714-17.) Prior to the examination Plaintiff described his history of lower back pain and keratoconus as well as symptoms associated with his diagnosed Tourette's syndrome. (T. 709.)

During the examination, Dr. Lorensen observed an abnormal gait, as Plaintiff walked with a limp and was unable to walk on heels and toes. (T. 710.) Plaintiff did not use an assistive

device, needed no help changing for the examination or getting on and off the exam table, and was able to rise from a chair without difficulty. (*Id.*) Plaintiff's cervical spine showed full flexion, extension, lateral flexion bilaterally, and full rotary movement bilaterally but he could not perform any flexion and extension of his lumbar spine. (T. 711.) Straight leg raises were positive to 60 degrees bilaterally,[6] with the exercise being performed while seated because Plaintiff reported "it would be too painful to lie down on his back." (*Id.*) Dr. Lorensen observed full range of motion in the shoulders, elbows, forearms, wrists, and fingers bilaterally, with intact hand and finger dexterity and full grip strength. (*Id.*) The consultative examination also showed full strength in the upper and lower extremities. (*Id.*)

Based on that examination, Dr. Lorensen initially opined on October 28, 2022 that Plaintiff had "moderate limitations for standing and ambulating," and "moderate to marked limitations for bending, lifting, carrying, pushing, pulling, and climbing." *Id.* Dr. Lorensen provided additional detail in a check-box form completed on November 4, 2022. (T. 718-723.) There, the consultative examiner opined that Plaintiff could occasionally lift and carry up to ten pounds but no greater weight; could sit for up to eight hours at one time without interruption; could stand for 30 minutes at one time without interruption and a total of two hours over the course of the workday and could walk for ten minutes at one time and a total of thirty minutes over the course of a workday. (T. 719.)

Dr. Lorensen further opined that Plaintiff could never reach overhead bilaterally and could only occasionally reach in other directions and push or pull bilaterally. *Id.* In Dr. Lorensen's opinion, Plaintiff could never climb stairs, ramps, ladders, or scaffolds and could

---

6 Positive straight leg raise test results are typically indicative of a herniated disc in the back or compression of a nerve root. https://www.webmd.com/back-pain/what-is-straight-leg-raise-test [https://perma.cc/4RFG-B52G].

never balance, stoop, kneel, crouch, or crawl. (T. 721.) Regarding daily activities, Dr. Lorensen opined that Plaintiff could not: shop; travel without a companion for assistance; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; or climb a few steps at a reasonable pace with the use of a single handrail. (T. 723.)

The ALJ deemed Dr. Lorensen's opinion "less persuasive." (T. 21.) He acknowledged "that the physical exam of [Plaintiff] by Dr. Lorensen included a few adverse findings that might support [his] assessment of [Plaintiff's] functioning" but concluded that "Dr. Lorensen's opinions are supported by just a single examination of the claimant and are inconsistent with the opinions regarding the claimant's functioning that were rendered by" Dr. Zito, Dr. Vinluan, Dr. Putcha, and Dr. Shepard, qualified physicians who all had access to Plaintiff's broader treatment record. *Id*.

**3. Dr. Zito, Dr. Vinluan, and Dr. Putcha**

Dr. Gregory Zito reviewed Plaintiff's then-current medical records on January 14, 2022, and offered his opinion of Plaintiff's functional limitations. (T. 102-105.) He opined that Plaintiff could occasionally lift up to twenty pounds and frequently lift up to ten pounds. (T. 102-103.) He also opined that Plaintiff could stand and/or walk for about six hours over the course of an eight hour workday and could sit for about six hours during the workday. (T. 103.) Regarding postural limitations, Dr. Zito opined that Plaintiff was limited to occasionally stooping, kneeling, crouching, and crawling. (T. 103-104.) On March 29, 2022, Dr. A. Vinluan endorsed the finding that Plaintiff could perform light work. (T. 650.)

On April 25, 2022, Dr. S. Putcha reviewed Plaintiff's updated medical records in connection with his request for administrative reconsideration and offered a slightly more restrictive opinion. (T. 117-120.) Like Dr. Zito, Dr. Putcha opined that Plaintiff could

occasionally lift up to twenty pounds and frequently lift up to ten pounds. (T. 117-118.) His opinion differed regarding standing or walking, by limiting Plaintiff to a total of two hours over the course of the workday. (T. 118.) In a brief narrative, the consultant cited Plaintiff's statements that he could not stand for more than fifteen minutes at a time due to back spasms and tightening. (T. 120.) Dr. Putcha further opined that Plaintiff could sit for a total of about six hours during an eight hour workday, and was limited to only occasionally performing certain postural activities: climbing ramps, stairs, ladders, ropes, and scaffolds; balancing, stooping, kneeling, crouching, and crawling. (T. 118-119.)

**4. Dr. Douglas Shepard**

At the August 1, 2024 hearing following the administrative remand, Dr. Shepard testified as an impartial medical expert. (T. 41-57.) In addition to offering his opinion of Plaintiff's functional limitations, Dr. Shepard provided a comprehensive review of Plaintiff's treatment record, including an interpretation of the available nerve studies and imaging reports, and offered his thoughts on the more restrictive opinions in the record from Dr. Wulff and Dr. Lorensen. (T. 43-49.) Dr. Shepard noted that Plaintiff has had chronic ongoing lumbar pain since his 2009 workplace injury, with a contemporaneous MRI showing "spondylosis and degenerative disc disease, [and] some arthritis of the joints" that were treated conservatively. (T. 43.) He observed that Plaintiff's more recent x-rays "revealed multi-level degenerative [disc] disease, which would not be that unusual in a gentleman who was middle-aged and a laborer" and that he continued to be treated with non-surgical conservative treatment. (T. 45-46.)

Reviewing the opinions of Dr. Wulff and Dr. Lorensen, Dr. Shepard noted that the restrictive findings of Dr. Lorensen's October 2022 consultative examination are not reflected in any of the subsequent medical records, including Dr. Wulff's treatment notes or pain

management clinic notes that repeatedly describe Plaintiff as in "no pain or distress" in 2022, 2023 and 2024. (T. 56.)

Dr. Shepard testified that he did not consider Plaintiff to meet the criteria of any listed impairment. (T. 51-52.) He then offered his opinion regarding Plaintiff's RFC:

> I believe that he could stand and walk six hours in an eight-hour day, but not consecutively. I would limit standing and walking to two-hour intervals followed by a break or sitting down for, say, an hour. I think he could sit for eight hours in a day. I wouldn't recommend it. I would say every 30 minutes get up and stretch for 5 or 10 minutes, but other than that, I think he would be able to sit without too much impairment. I would avoid repetitive . . . stooping."

(T. 52.) He further opined that Plaintiff had no limitations kneeling or crouching but should avoid crawling. (T. 53.) Addressing other limitations, Dr. Shepard testified:

> I don't think there would be any problem with him climbing steps or walking up ramps because your back is going to be inclined forward, which would actually, you know, accommodate his pain rather than if he was standing upright. . . I don't think there's any limitations on his upper extremities except I would avoid repetitive maximal reaching overhead with either arm more than two or three times an hour because if you're, you know, sometimes you reach overhead to stretch and you arch your back, and that would be bad, but I think lifting, raising your arms to like chin level, 90 degrees, shoulder level, I don't think there's a problem with that, nor manipulation, fine handling, et cetera. Lifting and carrying, I would say 10 pounds frequently, 20 pounds occasionally. He would require assistance if they needed to lift more than that, in my opinion. I don't think there's going to, looked like he had no numbness in his feet. His range of motion was good and his power was good. And again, last year's exam didn't reflect any neurological abnormality . . . so I don't think there would be any contraindication to him using his feet for pedals, for example . . . He should avoid exposure to cold, damp weather for a sustained duration, and I would avoid operation of vibratory tools like jackhammers, drills, you know, big power drills, or driving, if he were to have a job as a driver, for example, riding over uneven terrain, a construction site. I think that would jar his back and aggravate his symptoms.

(T. 53-54.)

In response to questioning from Plaintiff's counsel regarding potential time off task due to pain, Dr. Shepard opined that, if Plaintiff remained compliant with his currently prescribed

medication, he would experience "a degree of discomfort" but that the pain would not be a distraction in most situations. (T. 54-55.) Given the likelihood that Plaintiff's back pain could become more intolerable in cold weather or similar conditions, Dr. Shepard opined that Plaintiff "might have a day where his back was really sore and stiff and it would be distracting. He might need an occasional day off for maybe three to five days a year, max . . ." (*Id.*)

The ALJ found Dr. Shepard's opinion to have "the most persuasive value." (T. 19-20.) He provided a number of reasons for doing so: Dr. Shepard's "area of expertise" in orthopedics, his review of the entire record, and his opinion being "consistent" with the overall record and "somewhat consistent" with the opinions of Dr. Zito, Dr. Vinluan, and Dr. Putcha. (T. 19-20.) Although the ultimate RFC determination incorporates most of Dr. Shepard's opinion, the ALJ declined to adopt his conclusions that Plaintiff would need to sit down for one hour after walking for two hours and should stand and stretch for five or 10 minutes after sitting for 30 minutes. (T. 20.) The ALJ did not fully reject Dr. Shepard's conclusion regarding Plaintiff's need to change positions but instead concluded that the need "can instead be adequately addressed by allowing [Plaintiff] to alternate between standing and walking at two-hour intervals throughout the day, and to move from a sitting position to a standing position at 30-minute intervals throughout the day while remaining at the workstation." (*Id.*)

### C. The ALJ's Evaluation of the Medical Opinion Evidence was Supported by Substantial Evidence.

ALJs are not required to "reconcile every conflicting shred of medical testimony." *Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981). However, it is equally true that ALJs must discuss the evidence and factors "crucial" to the disability determination with "sufficient specificity to enable [this Court] to decide whether the determination is supported by substantial evidence." *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984) (citing *Treadwell v. Schweiker*, 698 F.2d

137, 142 (2d Cir. 1983)). Put another way, an ALJ must "build an accurate and logical bridge from the evidence to her conclusion to enable a meaningful review." *Pamela P. v. Saul*, No. 3:19-CV-575 (DJS), 2020 WL 2561106, at *4 (N.D.N.Y. May 20, 2020) (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

Plaintiff contends that the ALJ failed to adequately explain his reasons for discounting the most restrictive portions of the medical opinion evidence, particularly Dr. Wulff's opinion that Plaintiff could not sit for extended periods and would frequently be off-task and absent from work because he was distracted by pain (T. 609); Dr. Lorensen's opinion that Plaintiff could only walk for ten minutes and stand for thirty minutes at one time (T. 719) ; and Dr. Shepard's suggestion that Plaintiff should "get up and stretch for 5 or 10 minutes" every half hour during the workday. (T. 52.) This Court disagrees, as the ALJ's reasoning is either stated in the text of his decision or can be readily gleaned from a review of the broader record.

In discounting the most restrictive portions of Dr. Wulff's opinion, the ALJ specifically noted the ten month gap between the orthopedic specialist's examination of Plaintiff and his issuance of the decision. (T. 22.) He also noted its inconsistency with the opinion of Dr. Shepard, who had reviewed Plaintiff's full treatment history including his use of non-narcotic prescription pain medication. (T. 45-47.) Dr. Shepard opined that Plaintiff's treatment history showed that Plaintiff "might have a day where his back was really sore and stiff and it would be distracting" and Plaintiff "might need an occasional day off for maybe three to five days a year, max . . ." (T. 54-55.) Dr. Shepard's conclusion is consistent with the detailed summary of Plaintiff's medical history set forth in the ALJ's decision, particularly treatment notes repeatedly describing Plaintiff as being in "no pain" and declining more intensive treatment such as lumbar injection therapy. (T. 16-17, 757, 759, 761, 764, 769, 770, 773, 774.) Therefore, the ALJ's

rejection of Dr. Wulff's conclusions regarding time off task and absenteeism were supported by substantial evidence, particularly where Dr. Wulff did not appear to rely on any formal evaluations or other record evidence for this restriction.

Plaintiff also contends that the ALJ did not adequately address Dr. Wulff's own objective findings in his analysis of the orthopedist's opinion. (Dkt. No. 11 at 19.) However, the ALJ included these treatment notes in his earlier expansive discussion of Plaintiff's treatment history. (T. 15, 626-634.) Because the connection with this earlier discussion was clear, the ALJ was not obligated to recite this evidence again during his analysis of Dr. Wulff's opinion. *See Candy A. O. v. Kijakazi*, No. 5:20-CV-0766 (DEP), 2022 WL 226804, at *5 (N.D.N.Y. Jan. 26, 2022) ("It is proper to read the ALJ's decision as a whole and it would be a needless formality to have the ALJ repeat substantially similar factual analyses.")

The ALJ's evaluation of Dr. Lorensen's opinion was likewise supported by substantial evidence. Dr. Shepard, whose opinion the ALJ found most persuasive, testified that the significant limitations observed during Dr. Lorensen's October 2022 consultative examination were not replicated elsewhere in Plaintiff's treatment history. (T. 56.) This conclusion is again supported by the ALJ's detailed discussion of the longitudinal record, which includes multiple physical examinations by members of Dr. Wulff's orthopedic practice and pain management specialists in 2022, 2023 and 2024 describing Plaintiff as within "normal limits," including a normal gait, full strength in the extremities, and extended periods where Plaintiff reported no pain despite expressing dissatisfaction with the success of treatment. (T. 16-17, 727-729, 755-757, 760-761 764-765, 773-774.) Thus, the ALJ appropriately exercised caution regarding outlier findings from a single consultative examination, an approach long endorsed by the Second Circuit. *See Selian v. Astrue*, 708 F.3d 409, 419 (2d Cir. 2013) ("We have previously

cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination.")

Finally, the ALJ's decision to exclude Dr. Shepard's recommendation that Plaintiff should stretch for five to ten minutes after sitting for a half hour was supported by substantial evidence. (T. 20.) As the ALJ noted, unlike most of Dr. Shepard's detailed testimony, the impartial medical expert "did not provide a specific explanation that would fully support" this accommodation. (*Id.*) Indeed, Dr. Shepard appeared to offer regular stretching as a best practice, not a necessity for Plaintiff to be able to meet the requirements of light work. Dr. Shepard's full testimony provided that "I think he could sit for eight hours in a day. I wouldn't recommend it. I would say every 30 minutes get up and stretch for 5 or 10 minutes, but other than that, I think he would be able to sit without too much impairment." (T. 52.) When read in this context, the Court can readily glean the basis for the ALJ's reasonable exclusion of a stretching requirement from the RFC.

It is well-established that an ALJ's RFC determination is not required to mirror any particular medical opinion. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is] entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with the record as a whole."). The ALJ did so here, by crafting an RFC based upon a comprehensive review of Plaintiff's treatment record, the medical opinion evidence, and hearing testimony. Even where the ALJ found a lack of support for the most restrictive portions of the opinions of Dr. Wulff and Dr. Lorensen, he incorporated other aspects of those opinions where he found broader record support, including limitations on walking or standing for extended periods and the ability to change positions on a regular basis during the

workday.

Dr. Shepard's testimony, which included a detailed analysis of Plaintiff's treatment history and the opinions of Dr. Lorensen and Dr. Wulff, provided a strong basis for the ALJ to discount certain restrictions that did not require erroneous reliance on the ALJ's lay opinion. But the ALJ did not rely on Dr. Shepard's opinion alone. Even though the ALJ deemed Dr. Shepard's testimony the most persuasive overall, he emphasized those portions of the expert's testimony that were bolstered by the opinions of the non-examining consultants and Plaintiff's treatment history. In doing so, the ALJ appropriately considered the total limiting effects of Plaintiff's impairments before reaching his disability determination.

At best, Plaintiff's challenge to the ALJ's assessment of the medical opinions and the overall medical evidence is "premised upon a disagreement over how the ALJ resolved arguably conflicting evidence" about Plaintiff's physical functional limitations and does not present grounds for remand. *See Kimball v. Comm'r of Soc. Sec.*, No. 6:14-CV-0698 (LEK/ATB), 2015 WL 4251163, at *9 (N.D.N.Y. July 13, 2015). This court will not reweigh the evidence presented to the ALJ. *See Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *rep't-rec. adopted*, 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.")

(citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

**ACCORDINGLY**, it is

**RECOMMENDED** that the Commissioner's decision be **AFFIRMED**, Defendant's motion for judgment on the pleadings (Dkt. No. 13) be **GRANTED**; Plaintiff's motion for judgment on the pleadings (Dkt. No. 11) be **DENIED**; and Plaintiff's complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have 14 days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN 14 DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

Dated: September 4, 2026
Binghamton, New York

Miroslav Lovric
U.S. Magistrate Judge